## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

| | | |
|---|---|---|
| RUBY SUTTERFIELD o/b/o D.I.S., a minor, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:18-cv-02111-JEO |
| v. | ) ) | |
| ANDREW SAUL, Commissioner of Social Security, | ) ) ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION</u>

Plaintiff Ruby Sutterfield brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application on behalf of her minor great-grandson for Childhood Supplemental Social Security ("SSI"). (Doc. 1).[1] The case has been assigned to the undersigned United States Magistrate Judge pursuant to this court's general order of reference. The parties have consented to the jurisdiction of this court for disposition of the matter. *See* 28 U.S.C. § 636(c), FED. R. CIV. P. 73(a). (Doc. 9). Upon review of the record and the relevant law, the undersigned finds that the Commissioner's decision is due to be affirmed.

---

[1] References herein to "Doc(s). __" are to the document numbers assigned by the Clerk of the Court to the pleadings, motions, and other materials in the court file, as reflected on the docket sheet in the court's Case Management/Electronic Case Files (CM/ECF) system.

# I. PROCEDURAL HISTORY

On August 9, 2010, Sutterfield filed an application for SSI on behalf of her minor great-grandson ("D.I.S."). (R. 363, 565-68). The claim was denied initially, and on June 24, 2012, an administrative law judge ("ALJ") found that D.I.S. was not disabled. (R. 441-62). The Appeals Council denied the request for review on December 20, 2012. (R. 463-65). On June 6, 2013, Sutterfield filed an action in federal court seeking review of the denial, and, on August 13, 2015, the court reversed and remanded the decision to the Commissioner for further findings. (R. 469-87). On November 3, 2015, the Appeals Council vacated the final decision of the Commissioner and remanded the case to the ALJ for further proceedings consistent with the district court order. (R. 488-92).

While that application was pending review by the federal court, Sutterfield filed another application for SSI on behalf of D.I.S. (R. 490). A favorable determination was issued on November 19, 2013, finding D.I.S. disabled as of June 4, 2013, the date the second application was filed. (*Id*.). The record was reviewed on July 29, 2015, and it was determined that his disability continued. (*Id*.). The Appeals Council affirmed the favorable determination but noted that the current claim for SSI required further administrative proceedings for the time period before

June 4, 2013. (*Id*.). The Appeals Council directed the ALJ to afford the opportunity for a hearing, take any further action to complete the administrative record, and issue a new decision for the period before June 4, 2013. (*Id*.).

After the hearing on March 24, 2016, (R. 410-40), the ALJ determined that D.I.S. was not disabled for the period from August 9, 2010 until June 4, 2013. (R. 360-80). Sutterfield requested a review of the ALJ's decision by the Appeals Council, which declined review on October 30, 2018. (R. 353-59). As a result, the ALJ's decision became the final decision of the Commissioner of Social Security and is properly before the court.

## II. FACTUAL BACKGROUND

D.I.S. was born on October 19, 2009. As discussed above, D.I.S. was found disabled as of June 4, 2013, but Plaintiff alleges he was disabled before that date. (R. 367). The relevant period at issue for the court is from August 9, 2010, the date Plaintiff filed his first SSI application, until June 4, 2013, the date he was determined disabled. As such, he was a newborn/infant when the application was filed and was a preschooler at the time the relevant period for the decision ended. (R. 367). In the application, Plaintiff alleges D.I.S. was disabled due to asthma, vocal cord paralysis and poor muscle development in his legs. (R. 128-40, 144-50, 565, 579-84, 594).

Following the administrative hearing, the ALJ first determined D.I.S. has not engaged in substantial gainful activity since the application date. (R. 367). The ALJ further found that D.I.S. has the following severe impairments during the period at issue: a history of bilateral congenital vocal cord paralysis with a history of signs and symptoms of chronic stridor, wheezing, and hoarseness; and a history of hypotonia and gross motor delays. (*Id*.). She also found that D.I.S. did not have an impairment or combination of impairments that met or equaled the severity of a listed impairment. (R. 369). The ALJ then considered the six functional equivalence domains and found that D.I.S. did not have an impairment or combination of impairments that functionally equals the severity of the listings. (R. 369-80). Based on this finding, the ALJ found D.I.S. was not disabled during the time period from August 9, 2010, through June 4, 2013. (R. 380).

## III. STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The function of the court is to determine whether the Commissioner's decision is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 1422 (1971); *Mitchell v. Comm'r Soc. Sec.*, 771 F.3d 780, 782 (11th Cir.

2015); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

The court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, it must reverse the ALJ's decision. *See Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991). The court must affirm the ALJ's decision if substantial evidence supports it, even if other evidence preponderates against the Commissioner's findings. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir.1990)).

## IV. STATUTORY AND REGULATORY FRAMEWORK

An individual under the age of 18 is considered disabled if he shows a "medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The claimant bears the burden of proving that he is disabled and is responsible for producing evidence sufficient to support his claim. *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

For those under the age of 18, a determination of disability under the Social Security Act requires a three-step analysis. 20 C.F.R. § 416.924(a). The Commissioner must determine in sequence:

(1) Is the child engaged in substantial gainful activity?
(2) Are the child's impairments severe?
(3) Do the child's impairments satisfy or medically equal on of the specific impairments set for in 20 C.F.R. Pt. 404, Subpt. P App. 1?

*See Henry v. Barnhar*t, 156 F. App'x 171, 173 (11th Cir. 2005) (citing 20 C.F.R. §

416.924(a); *Wilson v. Apfel*, 179 F.3d 1276, 1277 n.1 (11th Cir. 1999)).

In determining whether an impairment or combination of impairments meets a listing, "the ALJ must consider six domains which are broad areas of functioning intended to capture all of what a child can and cannot do." *Bryant v. Soc. Sec. Admin.*, 478 F. App'x 644, 645 (11th Cir. 2012) (internal citation and quotations omitted). Those domains are: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objections, (4) caring for yourself, and (5) health and physical well-being. 20 C.F.R. § 416.926a(b)(1). "Functional equivalence is found if the child's impairment or combination of impairments results in marked limitations in two domains of functioning or an extreme limitation in one domain." *Ware v. Colvin*, 997 F. Supp. 2d 1212, 1216 (N.D. Ala. 2014) (internal citation and quotation omitted). "If the impairment(s) does not satisfy the duration requirements, or does not meet, medically equal, or functionally equal one of the Listings in the Regulations, a finding of not disabled will be reached and the claim will be denied." *Id*.

## V. DISCUSSION

Although it is not abundantly clear and certainly not organized as such, the

court gleans the following alleged errors by the ALJ from Sutterfield's brief: (1) the ALJ erred by discounting the opinions of Dr. Wiatrak, Dr. Fequiere, and Dr. Ellis-Cox (doc. 10 at 18-24, 34-35 doc. 14 at 2-5,8-10); (2) the ALJ erred in not finding that D.I.S.'s ADHD did not meet or functionally equal the Listing of Impairments § 112.11, (*id*. at 24-25; doc. 14 at 5-6); (3) the ALJ failed to consider the combination of impairments in finding that D.I.S.'s limitations did not meet or equal the listing of impairments, (doc. 10 at 25-33; doc. 14 at 6-8); and (4) the ALJ erred in evaluating Sutterfield's testimony about D.I.S.'s complaints and symptoms, (*id*. at 35-36). The court addresses each contention below.

**A. Physician Opinions**

Plaintiff contends that the ALJ improperly found that the opinions of Dr. Wiatrak, Dr. Fequiere and Dr. Ellis-Cox were not persuasive. (Doc. 10 at 21). An ALJ must state with particularity the weight given different medical opinions and the accompanying reasons. *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987) (citation omitted). The ALJ should consider, among other things, the examining and treatment relationship between the claimant and doctor, the length of the treatment, the supportability and consistency of the evidence, and the specialization of the doctor. 20 C.F.R. § 404.1527(c). More weight is generally given to opinions that

are more consistent with the record as a whole. *Id*. § 404.1527(c)(4).

While a treating physician's opinion is generally entitled to weight, a one-time examiner's opinion is not. *See McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) (citation omitted). Even the opinion of a treating physician, however, need not be given weight when there is "good cause" - for instance, when a treating physician's opinion is conclusory or inconsistent with his own records. *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004). The court will not second guess an ALJ's decision to reject a medical opinion for "good cause" so long as the ALJ articulates a specific justification for his decision. *Hunter v. Comm'r of Soc. Sec. Admin.*, 808 F.3d 818, 823 (11th Cir. 2015).

### 1. Dr. Brian J. Wiatrak

Dr. Wiatrak, an associate clinical professor in surgery and physician in pediatric otolaryngology at Children's of Alabama and D.I.S's treating physician, submitted a letter to the Social Security Administration on May 3, 2012. (R. 352). After briefly discussing D.I.S's history of medical problems and scheduled treatments, Dr. Wiatrak opined:

> In my medical opinion, [D.I.S.] is a strong candidate for disability due to decreased exercise tolerance, increased work of breathing and low respiratory reserve brought on by his medical condition, which is bilateral true vocal cord paralysis. He is under ongoing physician care

for this diagnosis which does severely impair his physical function.

(*Id.*). The ALJ discussed Dr. Wiatrak's opinion in the course of making her finding on the sixth functional domain, "Health and Physical Well-Being," where she ultimately found a less than marked limitation.  (R. 379).

The ALJ gave Dr. Wiatrak's "opinion that the claimant is a strong candidate for disability based on his breathing problems little weight."  (*Id.*).  The ALJ discussed the medical record relating to D.I.S's vocal paralysis, stridor, and related breathing and voice problems.  (R. 378-79).  She reasoned that Dr. Wiatrak's opinion was "less persuasive because it is not consistent with medical records showing unremarkable physical examinations, little to no evidence of functional impairment, and only mild, sporadic breathing impairment . . . ."  (R. 379).  The ALJ specifically noted the previous district court's acceptance of the same opinion regarding Dr. Wiatrak's statement in her finding, and the district court's notation that Dr. Wiatrak's records "show that [D.I.S.] was improving while under Dr. Wiatrak's care."  (R. 370, 379).

Substantial evidence supports the decision of the ALJ to give this opinion from Dr. Wiatrak little weight for the same reasons stated by the previous district court.  (R. 479-82).  Specifically, as reasoned by the earlier opinion:

> After comparing the ALJ's discussion of the medical records with the records themselves, the court finds that he had substantial evidence for his decision to assign little weight to Dr. Wiatrak's opinion. The ALJ accurately summarized the medical records, and they do indeed seem inconsistent with the doctor's opinion that D.I.S.'s breathing problems "severely impair his physical function." (Tr. 352). The records show some recurring wheezing and stridor, but not evidence of problems to the extent indicated by Dr. Wiatrak's opinion.

(R. 481). Sutterfield did not present any argument to change this court's opinion. Instead, she reiterated some of her argument previously presented and either rejected or disregarded, (R. 22-23), and cited to rules and regulations but failed to explain how those rules and regulations had been violated with regard to the assignment of little weight to the opinion of Dr. Wiatrak.[2] (R. 22-24). Therefore, the court finds that the ALJ had substantial evidence for her determination that Dr. Wiatrak's opinion should be given little weight.

## 2. Dr. Pierre Fequiere

D.I.S. was referred to Dr. Fequiere, a pediatric neurologist, for hypotonia, or decreased muscle tone. (R. 204-06, 695-96). At the time of the one-time

---

[2] Sutterfield contends that the ALJ's reliance on the records provided by Kimberly Dumas, CRNP, is improper. (Doc. 10 at 19-20). She asserts that the records are internally inconsistent and contrary to the records from Dr. Wiatrak and the teacher questionnaire. (*Id*.). First, the teacher questionnaire is from D.I.S.'s kindergarten teacher and not relevant to the time at issue here. Second, the ALJ did not rely on Dumas's records in assigning little weight to the opinion of Dr. Wiatrak. Instead, the notes are part of the ALJ's discussion of D.I.S.'s longitudinal medical history in the course of discussing the six functional domains.

examination, D.I.S. was seven months old.  Dr. Fequiere discussed the history of D.I.S.'s medical problems, including his foster mother's reports that he had been "floppy" since birth, but noted that he was able to sit with support, roll, reach, and transfer objects.  (R. 204, 695).  Although he did not put weight on his legs, D.I.S. was "overall making progress."  (*Id*.).  Dr. Fequiere's physical examination noted decreased muscle tone but normal muscle bulk and his muscle strength was noted to be at least 4 out of 5.  (R. 205-06).  His range of motion was full, with the exception of a decreased range of motion in his ankles.  (*Id*.).  Under "impression," Dr. Fequiere opined:

> [D.I.S.] is a 7 month old boy with stridor and hypotonia.  His physical exam is nonfocal with a mildly decreased tone.  He is gaining milestones slowly.  With his constellation of symptoms, his differential diagnosis includes myopathy, a genetic condition, a metabolic condition, a neuropathy.

 (R. 206).  He recommended monitoring milestones, early intervention, with possible nerve conduction studies/electromyography at age 2 if the diagnosis was unsure, and a recheck at 8 months or before if regression was seen.  (*Id*.).

The ALJ discussed Dr. Fequiere's examination in two places in her opinion.  She first discussed it in the course of making her finding as to D.I.S.'s severe impairments, where she found a history of stridor and hypotonia.  (R. 368).  The ALJ

used Dr. Fequiere's examination to support this finding, noting the diagnosis as well as the recommendations for possible future procedures. (*Id*.). She also noted that those future procedures were not necessary during the relevant time period. (*Id*.). Second, she referenced it in the course of making her finding on the sixth functional domain, "Health and Physical Well-Being," where she ultimately found a less than marked limitation. (R. 379-80).

While the court acknowledges that the ALJ did not specify the particular weight given to the one treatment record of Dr. Fequiere, it is clear that the ALJ considered and did not discount the opinion of Dr. Fequiere, as argued by Sutterfield. The ALJ accurately summarize the medical record from Dr. Fequiere and considered it in her findings. In fact, as stated above, the ALJ used the findings of Dr. Fequiere to support her determination that D.I.S. had a severe impairment of a history of stridor and hypotonia. (R. 368). Additionally, the ALJ's discussion of Dr. Fequiere's treatment record with regard to D.I.S.'s health and physical well-being shows that the ALJ took his opinion into consideration with regard to his alleged motor delays. (R. 379-80). The ALJ did not discount Dr. Fequiere's record but detailed how later records revealed improvement in the area of motor delays in that by his 12-month check-up D.I.S. was able to stand well alone, crawl, and pull himself

up. (R. 380). Records in 2011 and 2012 reveal D.I.S. was able to stand and walk normally, with full strength and normal muscle tone. (*Id*.). There is no evidence in the record that any of the potential procedures or studies suggested by Dr. Fequiere were necessary. Based on the foregoing, the court finds Sutterfield's argument without merit.

### 3. Dr. Leesha M. Ellis-Cox

Dr. Ellis-Cox is a psychiatrist at the Cullman Mental Healthcare facility. There are no treatment records from Dr. Ellis-Cox. Instead, there is one letter that was sent to Dr. Mark Addison at Cullman Medical and Pediatric. (R. 730). It is unclear how many times Dr. Ellis-Cox had seen D.I.S. when she drafted the letter. (*See id*.). Regardless, the ALJ discussed the statements contained in the letter regarding D.I.S.'s alleged mental impairments. (R. 367-68). The ALJ summarized the letter from Dr. Ellis-Cox as follows:

> In a letter dated August 2013, a psychiatrist at Cullman Mental Healthcare, Leesha M. Ellis Cox, M.D., stated that the claimant had been a client of this facility since December 2012 with reports of "being very physically aggressive." However, she stated that "because of his small stature," she as of August 2013 "have [sic] not elected to see [the claimant] for a psychiatric evaluation."

(R. 367). Based on the letter, the ALJ concluded that D.I.S. had not been evaluated or diagnosed with a medically determinable mental impairment during the period at

issue. (R. 368). The ALJ did, however, acknowledge the recommendation of a need for a "work up" because "many undiagnosed and/or untreated medical conditions have behavioral manifestations." (*Id*.). The ALJ also acknowledged that Dr. Ellis-Cox did not make any specific diagnoses but mentioned a suspected "failure to thrive" of unknown origin. (*Id*.).

Sutterfield contends that the ALJ erred in finding Dr. Ellis-Cox's opinion "not persuasive."[3] (Doc. 10 at 21). The court finds no error. First, although the ALJ did not state the weight afforded to Dr. Ellis-Cox's letter, this failure can be explained by one simple observation: Dr. Ellis-Cox did not offer a medical opinion. Social Security regulations provide that "medical opinions" are "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). Dr. Ellis-Cox's letter does nothing more than report D.I.S.'s aggressive behavior, explain why he has not been seen for a psychiatric evaluation at that point, recount her review of

---

[3] Sutterfield also contends that the ALJ erred by not treating Dr. Ellis-Cox as a treating source. (Doc. 10 at 34). The court finds no merit to this argument. The ALJ accurately reviewed and discussed the letter in the record from Dr. Ellis-Cox and concluded that she did not make a diagnosis of a medically determinable mental impairment during the relevant time period. (R. 367-68). Nowhere did the ALJ state that Dr. Ellis-Cox was not a treating source.

D.I.S.'s medical history, and offer her advice as to the benefit of a failure to thrive "work up." (R. 730). Accordingly, the ALJ was not required to specify the weight assigned to Dr. Ellis-Cox's letter in the same way that she assigned weight to the opinion of Dr. Wiatrak, a treating physician who completed a medical source statement. Instead, the ALJ properly considered Dr. Ellis-Cox's letter in evaluating whether D.I.S. had a medically determinable mental impairment and did not err in failing to specify the weight assigned to Dr. Ellis-Cox's opinion.

**B. Listing of Impairments 112.11**

Although not really developed in her brief, Sutterfield suggests that D.I.S. meets or equals Listing 112.11 for neurodevelopmental disorders based upon her testimony that D.I.S. was "hyper," "a handful," and had "ADHD," as well as the statement from Dr. Ellis-Cox's letter that D.I.S. exhibited significant aggressive behavior including wielding knives at relatives. (Doc. 10 at 24-25). The court rejects this argument for the simple reason that Listing 112.11 applies only to "children age 3 to attainment of age 18." 20 C.F.R. pt. 404, Subpt. P, app. 1, § 112.11. Because D.I.S. was younger than age three during the relevant time period, this listing is inapposite.[4]

---

[4] The Commissioner raised this same argument in its opposition brief, (doc. 13 at 8), and Plaintiff not only failed to address it, but maintained that § 112.11 applied without discussion of the age limitation in her reply brief, (doc. 14 at 5-6).

### C.  Combination of Impairments

Sutterfield contends that the ALJ failed to consider D.I.S.'s impairments in combination in her determination that D.I.S.'s impairments do not functionally equal the severity of the listing.  (Doc. 10 at 25-33).  The Commissioner argues that the ALJ properly determined that D.I.S. did not functionally equal the listings.  The court agrees with the Commissioner and finds that substantial evidence supports the ALJ's determination that D.I.S.'s impairments, considered individually and in combination, did not functionally equal the listings.

As explained above, in determining whether an impairment or combination of impairments meets a listing, "the ALJ must consider six domains which are broad areas of functioning intended to capture all of what a child can and cannot do." *Bryant*, 478 F. App'x at 645. Those domains are: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objections, (5) caring for yourself, and (6) health and physical well-being.  20 C.F.R. § 416.926a(b)(1).  "Functional equivalence is found if the child's impairment or combination of impairments results in marked limitations in two domains of functioning or an extreme limitation in one domain." *Ware*, 997 F. Supp. 2d at 1216.  A marked limitation is defined as a

limitation that "interferes seriously with [the] ability to independently initiate, sustain, or complete activities," and is "more than moderate." 20 C.F.R. § 416.926a(e)(2)(i). The ALJ must consider the "interactive" and "cumulative" effects of all medically determinable impairments, including those impairments that are not severe. 20 C.F.R. § 416.926a(a), (c).

Here, the ALJ explained that she considered all the relevant evidence and evaluated the whole child in accordance with 20 C.F.R. §§ 416.926a(b) and (c) and SSR09-1p. (R. 369). She also stated that she assessed the interactive and cumulative effects of all of D.I.S.'s medically determinable impairments, as well as those impairments that are not severe in all of the affected domains. (*Id.*). In doing so, the ALJ found no limitations in the areas of acquiring and using information, attending and completing tasks, interacting and relating with others, and caring for himself. (R. 372-74, 376-77). As for the remaining two areas, moving about and manipulating objects and health and physical well-being, the ALJ found D.I.S. had some limitations, but they were less than marked. (R. 375-80).

Although Sutterfield contends that the ALJ erred in not finding that D.I.S. has severe impairments in all six domains, (R. 27-33), her argument is not persuasive. The evidence cited by Sutterfield is insufficient to convince the court that D.I.S. has

a severe limitation in any of the six domains or a marked impairment in two of the six domains. First, she makes no argument regarding the finding of the ALJ that D.I.S. has no limitation in the areas of caring for personal needs. (Doc. 10 at 29-30). Second, with regard to the first three domains - acquiring and using information, attending and completing tasks, and interacting and relating with others - Sutterfield points to her testimony regarding D.I.S.'s inattention, impulsiveness and hyperactivity, as well as the medical evidence regarding his anger and aggressiveness. (*Id*. at 27-29). This evidence, however, is not enough to rise to the level of a severe or marked limitation, especially in light of the other testimony and medical evidence cited by the ALJ in support of her findings. (R. 370-74). This is especially true since D.I.S. was not diagnosed by an acceptable medical source with a medical determinable mental impairment or attention deficit hyperactivity disorder during the relevant time period.

Finally, with regard to the two domains where the ALJ found a less than marked limitation - moving and manipulating objects and health and physical well-being - substantial evidence supports these findings. With regard to moving and manipulating objects, the ALJ considered the testimony and medical evidence regarding his early motor delays but found that later records revealed no chronic or

ongoing problems in this area. (R. 376). For example, by 12 months of age, D.I.S. was able to stand well alone, crawl, and pull himself up with normal musculoskeletal and neurological exams. (R. 190-93). D.I.S. was noted to meet normal 12-month milestones with regard to his motor skills, including scribbling spontaneously, walking unassisted, stooping, climbing stairs, stacking 2 blocks, using a spoon, turning pages of a book, and kicking a ball. (R. 335). Accordingly, substantial evidence supports the ALJ's finding of a less than marked limitation in this domain.

With regard to health and physical well-being, the ALJ thoroughly discussed and considered the medical evidence in the record in making her determination that his limitations were less than marked. (R. 378-80). Sutterfield points to the ALJ's discounting of the treating specialist opinions, but the court has already found that substantial evidence supports the ALJ's treatment of the doctors and their opinions. Sutterfield does not point to any medical evidence to support her contention of a severe impairment in the domain of health and well-being. The ALJ clearly took into consideration the diagnoses of D.I.S., as well as the medical evidence supporting those diagnosis and the longitudinal medical history during the relevant time period. The court cannot find anything in the record indicating a severe or marked impairment in this domain. As such, substantial evidence supports the ALJ's finding

of a less than marked limitation in the domain of health and well-being.

## D.  Subjective Complaints

In the final paragraph of Sutterfield's brief, she states, without any real argument, that the ALJ did not adequately explain her reasons for discrediting Mrs. Sutterfield's testimony regarding D.I.S.'s symptoms.  (Doc. 10 at 35).  She contends that the testimony is consistent with the medical evidence in the record.  (*Id*. at 35-36).  In addressing a claimant's subjective description of pain and symptoms, the law is clear:

> In order to establish a disability based on testimony of pain and other symptoms, the **claimant must satisfy two parts** of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.  *See Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).  If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so.  *See Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (bold added); *see also* 20 C.F.R. §§ 404.1529.  If a claimant satisfies the first part of the test, the ALJ must evaluate their intensity, persistence, and effect on the claimant's ability to work.  *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. §§ 404.1529(c) & (d); 416.929(c) & (d). While evaluating the evidence, the ALJ must consider whether inconsistencies exist within

the evidence or between the claimant's statements and the evidence, including his history, medical signs and laboratory findings, and statements by medical sources or other sources about how his symptoms affect him. 20 C.F.R. §§ 404.1529(c)(4) & 416.929(c)(4). In determining whether substantial evidence supports an ALJ's credibility determination, "[t]he question is not . . . whether the ALJ could have reasonably credited [the claimant's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011). The ALJ is not required explicitly to conduct a symptom analysis, but the reasons for his or her findings must be clear enough that they are obvious to a reviewing court. *See Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995). "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Id.* (citation omitted).

The ALJ found that D.I.S's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but the statements regarding the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. (R. 370). Sutterfield testified that D.I.S. experienced breathing problems, extreme behavioral problems, learning problems, acid reflux, and motor delays that disable

him. (*Id*.). Sutterfield, however, fails to point to medical evidence in the record to support her contentions that her testimony regarding these conditions rendered D.I.S. disabled during the relevant time period, and the court finds none. The court finds that the ALJ's determination is supported by substantial evidence and this argument is without merit.

## VI. CONCLUSION

Having reviewed the administrative record and considered all of the arguments presented by the parties, the undersigned find the Commissioner's decision is supported by substantial evidence and in accordance with applicable law. Therefore, the court finds that the ALJ's decision is due to be **AFFIRMED**. A separate order will be entered.

**DATED**, this the 25th day of October, 2019.

_____
**JOHN E. OTT**
Chief United States Magistrate Judge